**BACKGROUND INFORMATION SERVICES, INC., Plaintiff–Appellee,**

v.

**OFFICE OF the STATE COURT ADMINISTRATOR, Colorado Judicial Department, and Steven V. Berson, State Court Administrator, Defendants–Appellants.**

No. 97CA1611.

Colorado Court of Appeals,
Div. I.

Dec. 10, 1998.

As Modified on Denial of Rehearing
Feb. 11, 1999.

Rehearing Denied April 15, 1999.

Certiorari Granted June 21, 1999.

Pendleton, Friedberg, Wilson & Hennessey, P.C., F. Stephen Collins, Denver, for Plaintiff–Appellee.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Maurice G. Knaizer, Assistant Attorney General, Denver, for Defendants–Appellants.

Opinion by Judge ROTHENBERG.

Defendant, Office of the State Court Administrator (SCA), appeals the trial court's order requiring it to extract non-confidential information from existing court records which contain both confidential and non-confidential information, pursuant to the Open Records Act, § 24–72–201, et seq., C.R.S. 1998, and to provide that information to the plaintiff, Background Information Services, Inc. (BIS). We affirm.

SCA maintains a computer database containing all of the civil and criminal court proceedings for the State of Colorado. This database includes public and nonpublic information as defined in the Open Records Act.

BIS, a company which performs background searches on individuals, contracted with SCA to receive magnetic tapes containing only public information from the database. In order to extract the information, computer programs were designed and created which would extract only the public information from SCA's different computer databases. Each time SCA converted to a new computer system or when the General Assembly made certain public information nonpublic, modifications to the programs were made or new programs were created. BIS has always paid the costs of creating these programs and the costs generated by the extraction of the public information.

BIS does not seek the actual pleadings and papers filed in court, but only computer data regarding the type of case, description of the case, parties to the case, and other court information. Although SCA had provided this service to BIS for several years, after conversion to a new computer system, SCA stopped delivering the information to BIS. The reasons given by SCA included its concerns regarding invasion of privacy and its claim that it had no duty to extract the public information under the Open Records Act. This action by BIS and the order challenged in this appeal followed.

## I.

■ SCA contends the trial court erred in ordering disclosure of the information. According to SCA, the information would potentially violate the privacy interests of the persons whose names are contained in the records, and SCA also would be disclosing information in court records which are later sealed. We are not persuaded.

■ A court's primary task in construing a statute is to give effect to the intent of the General Assembly. Courts should interpret statutory terms in accordance with their plain and ordinary meaning. *Thurman v. Tafoya*, 895 P.2d 1050 (Colo.1995).

■ Statutes must be construed as a whole, and when interpreting a statute, a court must give consistent, harmonious, and sensible effect to all of its parts. A construction that leads to an absurd result will not be followed. *City of Grand Junction v. Sisneros*, 957 P.2d 1026 (Colo.1998).

■ The General Assembly has declared in the Open Records Act that, with certain specified exceptions, it is "the public policy of this state that all public records shall be open for inspection by any person at reasonable times...." Section 24–72–201, C.R.S.1998. *Denver Publishing Co. v. Dreyfus*, 184 Colo. 288, 520 P.2d 104 (1974). Exceptions to the Act should be narrowly construed. *Freedom Newspapers, Inc. v. Tollefson*, 961 P.2d 1150 (Colo.App.1998).

■ Any member of the public is entitled to review all public records unless there exists a legitimate reason for non-disclosure. There is no requirement that the party seeking access demonstrate a special interest in the records requested. *Denver Publishing Co. v. Dreyfus, supra*. See C.R.C.P. 121 § 1–5.2 (presuming all court records are to be open and placing burden on party seeking to limit access to demonstrate that harm to privacy outweighs public interest); *Anderson v. Home Insurance Co.*, 924 P.2d 1123 (Colo. App.1996).

Here, the trial court applied the proper standard and determined, with record support, that there was no harm to privacy interests outweighing the public interest in disclosure and that SCA's assertions of intrusion upon privacy interests did not overcome the strong presumption favoring access to court records. It further found that SCA's concern about the relatively few court records that initially were open, but were later sealed, did not overcome the presumption because BIS had agreed to delete any such records from its database.

Accordingly, we reject SCA's contention that the trial court erred in ordering disclosure to BIS of the public portions of the records.

## II.

SCA next contends the trial court erred in ruling that it had a duty to redact the non-public information and, in effect, to create a new public record in order to disclose the public information to BIS. We disagree.

SCA's database is a compilation of civil and criminal records containing both exempt and nonexempt information and does not constitute a separate public record. BIS only requested that SCA provide the public information in its database which ordinarily would be disclosed under the Open Records Act.

SCA resisted the request, maintaining that to provide BIS with the public or nonexempt information would require it to manipulate or extract the public data in order to prevent disclosure of non-public data. Relying on *Sargent School District No. RE–33J v. Western Services, Inc.*, 751 P.2d 56 (Colo.1988), SCA asserts that the Act imposes no such duty upon it.

However, in *Sargent School District No. RE–33J v. Western Services, Inc., supra,* the supreme court concluded that the case came within a specific and unambiguous exception in the Open Records Act which limited the disclosure of individual scholastic records. *See* § 24–72–204(3)(a)(I), C.R.S.1998. Because the records requested there contained only exempt information and required manipulation and alteration of the records to make the data nonexempt, the supreme court held there was no implied duty on the part of the custodian to alter confidential information to make it disclosable under the Open Records Act.

Here, in contrast, no such limiting statutory exception applies and BIS seeks only public information to which it is entitled. However, because both public and nonpublic information have been combined in one database, the court records contain both exempt and nonexempt information. Access to the public information requires only the redaction or deletion of nonexempt data.

If we were to accept SCA's argument that no implied duty exists to make such public information available, public agencies could limit access to public information by combining it with nonpublic information. This would contravene the stated purpose of the Act. The supreme court in *Sargent* acknowledged this potential for abuse when it stated that: "[A]ny record which an agency is required by law to keep could be rendered inaccessible to public scrutiny by the inclusion of confidential material." *Sargent School District No. RE–33J v. Western Services, Inc., supra* (fn.5).

Although the court concluded there was no such potential for abuse under the facts presented in *Sargent,* it left open the issue whether an implied duty would exist if the situation arose. That situation is presented here.

■ We therefore conclude that, where public records contain both exempt and nonexempt information, the Colorado Open Records Act imposes an implied duty on the custodian of the records to redact the exempt data from the records in order to facilitate the disclosure of the public information.

Our conclusion is in conformity with the decisions of other jurisdictions which have addressed this question under their own Open Records Acts. *See Northern California Police Practices Project v. Craig,* 90 Cal.App.3d 116, 153 Cal.Rptr. 173 (Cal.App. 1979) (objective of public records act requires segregation of nonexempt material where such is reasonably segregable from exempt information); *Family Life League v. Illinois Department of Public Aid,* 112 Ill.2d 449, 98 Ill.Dec. 33, 493 N.E.2d 1054 (Ill.1986) (where abortion records included both confidential and non-confidential information, state's Open Records Act imposed a duty on custodian to delete the confidential information); *State v. Harder,* 230 Kan. 573, 641 P.2d 366 (Kan.1982) (implying duty on custodian to delete confidential information from abortion records in order to disclose public information).

### III.

SCA next contends that Chief Justice Directive 98–05 (CJD 98–05) and the policy adopted by the Public Access Committee created by CJD 98–05 exempt the information requested by BIS from disclosure under § 24–72–204(1)(c), C.R.S.1998. Again, we disagree.

CJD 98–05 created the Public Access Committee to provide direction for the Judicial Branch regarding the release of information. On December 14, 1998, after briefs had been filed and after oral arguments had been heard in this case, the Public Access Committee adopted a policy concerning the release of bulk data and the record in this case was supplemented to so reflect.

Under the new policy, bulk data would not be released to government agencies or to private entities. Bulk data is defined to include the statewide database and all information in SCA's database remaining after the extraction of confidential data.

The General Assembly has declared in the Open Records Act that "all public records shall be open for inspection by any person at reasonable times, except ... as otherwise specifically provided by law." Section 24–72–201, C.R.S.1998. One such exception is con-

tained in § 24–72–204(1)(c), and restricts the public's right of access to court records if such inspection is "prohibited by *rules promulgated by the supreme court or by the order of any court.*" (emphasis added)

Hence, the issue is whether Chief Justice Directive 98–05 constitutes a rule promulgated by the supreme court or an order within the meaning of § 24–72–204(1)(c). We conclude that CJD 98–05 does not constitute either a rule or an order within the meaning of that statutory exception.

### A.

■ Under the Colorado Constitution, the Colorado Supreme Court can "promulgate rules governing the administration of all courts and shall make and promulgate rules governing practice and procedure in civil and criminal cases." Colo. Const. art. VI, § 21. However, the exercise of such powers authorized under the Constitution requires the concurrence of at least three justices, Colo. Const. art. VI, § 5(1), whereas Chief Justice Directives historically have been issued solely by the Chief Justice in her or his capacity as the executive head of the judicial system.

On several occasions, the supreme court has described Chief Justice Directives as policy statements made pursuant to the general power to administer the Colorado judicial system. *See Pachota v. District Court,* 807 P.2d 544 (Colo.1991); *Bye v. District Court,* 701 P.2d 56 (Colo.1985). *See also Yeager v. Quinn,* 767 P.2d 766 (Colo.App.1988). We have found no instance in which the court has described the Chief Justice Directives as rules.

Because CJD 98–05 does not purport to be issued by the supreme court as a body and does not reflect the concurrence of at least three justices, we conclude that it does not constitute a rule promulgated by the supreme court within the meaning of the Open Records Act. *See Martinelli v. District Court,* 199 Colo. 163, 612 P.2d 1083 (Colo. 1980) (construing language in §§ 24–72–201 and 24–72–204(1)(c) as reference to the rules of civil procedure and as expressing legislative intent that court should consider wheth-

er disclosure would be contrary to public interest).

### B.

■ We further conclude that CJD 98–05 is not "the order of any court" within the meaning of § 24–72–204(1)(c).

■ The exception in § 24–72–204(1)(c) prohibiting disclosure of records by court order was not intended to allow the preclusion of a broad category of otherwise disclosable records under the Act based on general policy. Instead, this exception provides that a court can prohibit disclosure of records on an individual basis only when privacy interests outweigh the public interest favoring disclosure. Although the supreme court obviously may waive or modify its own rules, it has not done so here. *See* C.R.C.P. 121 § 1–5.2 (order limiting access to court files shall not be granted except upon a finding that harm to privacy outweighs public interest); *Anderson v. Home Insurance Co., supra* (interpreting § 24–72–204(1)(c) as allowing a court to limit access only when right of privacy outweighs public interest).

SCA relies on Florida law to support its assertion that judicial records are exempted from the Open Records Act. *See Times Publishing Company v. Ake,* 660 So.2d 255 (Fla.1995) (holding that court clerks performing duties relating to the administrative operation of the courts, including the release of judicial records, are subject to the control of the Florida supreme court, not the legislative branch).

However, Florida's definition of public records under its Open Records Act is more narrowly tailored and only governs agency records. *See* Section 119.011(1), F.S.A.1998. We also note that, before the Florida supreme court announced its decision in *Times Publishing Company v. Ake, supra,* the court adopted a rule of Judicial Administration governing the release of judicial records. *See* Florida Rules of Judicial Administration 2.051. By that rule, it clarified that court records in Florida are presumed open for public inspection and it set forth specific standards for exempting particular records. *See* Florida Rules of Judicial Administration

2.051; *Barron v. Florida Freedom Newspapers, Inc.*, 531 So.2d 113 (Fla.1988).

In contrast, Colorado's Open Records Act defines public records to include records maintained "by the state, any agency, institution, or political subdivision of the state." Section 24–72–202(6)(a)(I), C.R.S.1998. Our supreme court has not held that judicial records are excluded from the Act, nor has the court promulgated a rule governing the release of such records.

For these reasons, we conclude that CJD 98–05 is neither "a rule" promulgated by the supreme court, nor is it "an order" of the court for the purpose of exempting records under § 24–72–204(1)(c), C.R.S.1998. Accordingly, we reject SCA's contention that CJD 98–05 and the policy adopted by the Public Access Committee prohibit the disclosure of the information requested by BIS.

### IV.

SCA further contends that § 30–10–101, C.R.S.1998, prohibits access to the pleadings and other papers filed in cases pending before a court except by parties in interest or their attorneys. We disagree.

The statute is inapplicable here because, as noted earlier, BIS has not requested the actual pleadings and papers filed in court. It seeks only computer data regarding the type of case, description of the case, parties to the case, and other court information. BIS has received the same information in past years from SCA. *See Times–Call Publishing Co. v. Wingfield*, 159 Colo. 172, 410 P.2d 511 (1966) (concluding that § 30–10–101 does not absolutely prohibit access by persons other than parties in interest).

We therefore reject SCA's assertions that disclosure of the information is prohibited by § 30–10–101.

### V.

Finally, SCA contends that it is not required to disclose criminal justice records because they are not public records as defined by the Open Records Act and that, instead, they are governed by the Criminal Justice Records Act. We disagree.

Criminal justice records are governed by §§ 24–72–301 to 24–72–309, C.R.S.1998, which are contained in part III of the Open Records Act. Section 24–72–304(1), C.R.S. 1998, specifically requires the custodian to make criminal justice records of official actions accessible to the public. All other criminal justice records are accessible at the discretion of the custodian.

Additionally, the General Assembly has provided for public access to the integrated criminal database maintained by SCA in § 16–20.5–101.5, C.R.S.1998, subject only to the limitations imposed by § 24–72–101, et seq., C.R.S. 1998.

Because BIS is asking for information which is public and which is required to be disclosed under the Open Records Act, we conclude that SCA must disclose such records of official actions. For the reasons stated earlier, we further conclude that the Open Records Act imposes an implied duty on SCA to redact any nonpublic information in those records.

Order affirmed.

Justice METZGER and Justice PLANK concur.